IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE LUIS JOAQUIN-DEL ORBE,** | : | |
| Petitioner | : | No. 1:13-cr-00174-8 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Respondent | : | |

**MEMORANDUM**

Presently before the Court is Petitioner Jose Luis Joaquin-Del Orbe ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1323.) For the following reasons, the Court will grant in part and deny in part Petitioner's § 2255 motion.

**I.     BACKGROUND**

On November 5, 2014, Petitioner was charged in a second superseding indictment with: (1) conspiracy to import, manufacture, distribute, and possess with the intent to manufacture and distribute one thousand (1000) grams or more of heroin, five (5) kilograms and more of cocaine hydrochloride, and fifty (50) grams or more of methamphetamine in violation of 21 U.S.C. § 846 (Count I); and (2) manufacturing, distributing, and possessing with the intent to manufacture and distribute one thousand (1000) grams or more of heroin in violation of 21 U.S.C. § 841(a) (Count II). (Doc. No. 542.)

Petitioner subsequently entered into a plea agreement with the Government. (Doc. No. 1123.)[1] The plea agreement called for Petitioner to plead guilty to Count I of the second superseding indictment. (Id. ¶ 1.) On January 6, 2017, Petitioner appeared before Magistrate

---

[1] At the time and through sentencing, Petitioner was represented by Guillermo Bosch, Esq, to whom the Court refers herein as "sentencing counsel."

Judge Carlson for a change of plea hearing. (Doc. No. 1143.) Magistrate Judge Carlson concluded that Petitioner was fully competent to enter an informed plea and understood the consequences of his plea, that he was pleading guilty knowingly and voluntarily, and that the plea was supported by an independent basis in fact. (Doc. No. 1145.) Magistrate Judge Carlson recommended that the Court accept Petitioner's guilty plea (id.), and on January 24, 2017, former District Judge William W. Caldwell accepted the plea of guilty (Doc. No. 1158). On July 14, 2017, Judge Caldwell sentenced Petitioner to one hundred forty (140) months' imprisonment followed by five (5) years' supervised release. (Doc. No. 1256.)

On April 16, 2018, Petitioner, proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1305.) The above-captioned action was reassigned to the undersigned on April 23, 2018. After Petitioner completed a notice of election form indicating that he wished to withdraw his initial § 2255 motion (Doc. No. 1322) and then filed the instant (operative) § 2255 motion (Doc. No. 1323), the Government filed a brief in opposition to his first § 2255 motion (Doc. No. 1333). Petitioner filed a traverse on October 12, 2018 (Doc. No. 1343), and on June 20, 2019, the Court ordered the parties to submit additional briefing regarding Petitioner's claim that his sentencing counsel was ineffective for failing to file an appeal (Doc. No. 1379). The parties filed additional briefing in July and August of 2019 (Doc. Nos. 1383, 1385), and the Court appointed counsel to represent Petitioner (Doc. Nos. 1388, 1389) and scheduled an evidentiary hearing (Doc. No. 1390). On February 26, 2020, the Court canceled the evidentiary hearing (Doc. No. 1399) based on the parties' agreement that a hearing was unnecessary (Doc. Nos. 1397, 1398). Finally, upon the Court's directive (Doc. No. 1400), the Government filed a brief in opposition to the instant motion (Doc. No. 1406), and

Petitioner filed a reply (Doc. No. 1412). Accordingly, Petitioner's motion (Doc. No. 1323) is ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185.

## III. DISCUSSION

In his § 2255 motion, Petitioner requests a new sentencing hearing based on ineffective assistance of counsel. (Doc. No. 1412 at 6.) Petitioner asserts six bases in support of his request for such relief. (Doc. No. 1323.) The Court will address each asserted basis for relief in turn.

### A. Legal Standard Applicable to an Ineffective Assistance of Counsel Claim

In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient." See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir.

2001). This prong requires Petitioner to show that "counsel made errors so serious that counsel was not functioning as guaranteed under the Sixth Amendment." See id. (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 687). To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See id. (citing Strickland, 466 U.S. at 688). However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." See id. This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 694). Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." See id. (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 694).

### B.  Counsel's Failure to File a Notice of Appeal

Petitioner first asserts that his sentencing counsel "rendered ineffective assistance of counsel when [he] did not file a [n]otice of [a]ppeal, as [Petitioner] had requested him [to do] several times." (Id. at 4.) Petitioner contends that throughout plea negotiations, he "was very clear when [he] told [his sentencing] counsel that [he] did not want to waive [his] right to appeal." (Id.) Petitioner alleges that he asked his sentencing counsel to file a notice of appeal after sentencing, but sentencing counsel failed to do so. (Id.) The Government initially argued that Petitioner's sentencing counsel could not have been ineffective for failing to file a notice of appeal given the appellate waiver in the plea agreement. (Doc. No. 1333 at 13.) However, the Government later conceded that Petitioner should be permitted to file a notice of appeal pursuant to Garza v. Idaho, 139 S. Ct. 738 (2019), based on a letter submitted by his sentencing counsel

on September 13, 2019, indicating that Petitioner had asked him to file an appeal (Doc. No. 1387).[2]  (Doc. No. 1397 at 5-6.)

Under Strickland, "[i]n certain Sixth Amendment contexts, prejudice is presumed." See Strickland, 466 U.S. at 692.  One such context is where "counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken." See Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000).  In Garza, the Supreme Court clarified that the presumption of prejudice applies "even when the defendant has signed an appeal waiver." See Garza, 139 S. Ct. at 744.  "Following Garza, [c]ourts have found that an appropriate remedy for a successful petitioner demonstrating that his counsel was ineffective for not filing a notice of appeal is to reenter the criminal judgment so that his appeal rights are reinstated." United States v. Pridgen, No. 17-cr-291, 2019 WL 5537893, at *5 (W.D. Pa. Oct. 25, 2019) (citing Rojas-Medina v. United States, 924 F.3d 9 (1st Cir. 2019)).

In response to Petitioner's request that an appeal be filed, sentencing counsel sent Petitioner a letter stating that Petitioner could not appeal his sentence (Doc. No. 1387-1), and a review of the docket indicates that a timely notice of appeal was not filed.  Accordingly, the Court finds that Petitioner has sufficiently stated a claim for ineffective assistance of counsel based on sentencing counsel's failure to file a notice of appeal.  See Garza, 139 S. Ct. at 744. The Court will therefore vacate and reenter Petitioner's criminal judgment and afford Petitioner fourteen (14) days to file a notice of appeal.  See United States v. Lawbaugh, No. 16-cr-49, 2020 WL 954017, at *3 (M.D. Pa. Feb. 27, 2020) (vacating and reentering a petitioner's sentence and

---

[2] In his letter, sentencing counsel indicated that – on either the day of or the day following Petitioner's sentencing – Petitioner's wife sent counsel a text message on behalf of Petitioner requesting that he file an appeal.  (Doc. No. 1387.)  Petitioner and the Government agree that this letter provides sufficient evidence to support Petitioner's claim for relief pursuant to Garza. (Doc. Nos. 1397, 1398.)

granting him 14 days to file an appeal after concluding that the petitioner had demonstrated ineffective assistance of counsel pursuant to Garza). Petitioner's appellate rights will be reinstated subject to the waiver contained in his plea agreement, which, for the reasons discussed, infra, Petitioner has failed to successfully challenge.

      **C.    Counsel's Alleged Failure to Request a Downward Departure on the Basis of Petitioner's and his Mother's Medical Conditions**

Petitioner next argues that his sentencing counsel provided ineffective assistance by failing to request a downward departure on the basis of Petitioner's "poor health," including his diabetes, and his mother's diabetes and daily kidney dialysis. (Id.) Neither of these arguments establishes ineffective assistance of counsel.

Regarding his own health, Petitioner asserts that he had provided sentencing counsel with hundreds of pages of medical records establishing that he suffers from chronic diabetes and other conditions. (Doc. No. 1323 at 23-34.) Because his sentencing counsel did not reference these medical records and did not request a downward departure based thereupon, Petitioner contends that counsel was ineffective. However, "Petitioner's claim that his physical condition was not raised prior to sentencing is [] directly contradicted by the PSR," see Adeyemi v. United States, No. 05-cv-5974, 2006 WL 1888547, at *4 (D.N.J. July 5, 2006), which informed the Court of Petitioner's medically substantiated diabetes, hypertension, high cholesterol, bleeding gums, and stomach inflammation (PSR at 37). Further, Defendant declined the opportunity to address his physical condition when Judge Caldwell invited him to make a statement on his own behalf at sentencing. (Doc. No. 1380 at 10.) Under these circumstances, it cannot be said that sentencing counsel was deficient. See, e.g., Adeyemi, 2006 WL 1888547, at *4 (holding that counsel was not deficient at sentencing for failing to address the petitioner's diabetes, which was referenced in the PSR).

Even assuming sentencing counsel was ineffective, Petitioner has failed to establish prejudice, i.e., a reasonable probability that, but for counsel's failure to so, the result of his sentencing would be different. An offender's "[p]hysical condition . . . may be relevant in determining whether a departure is warranted," but only "if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." See U.S.S.G. § 5H1.4. Petitioner does not contend that there is "medical evidence [showing] that the Bureau of Prisons cannot adequately provide for his health care needs." See United States v. Parker, No. 00-cr-315, 2002 WL 32341775, at *4 (E.D. Pa. Jan. 4, 2002) (citing U.S.S.G. § 5H1.4). "[H]e presents no basis for concluding that his condition, if treated, will worsen, or for concluding that he will be unable to receive treatment in prison." See United States v. Stevenson, No. 13-cr-161, 2014 WL 12675179, at *3 (S.D.N.Y. Sept. 8, 2014). He has failed to establish that his health conditions are "present to an unusual degree" such to "distinguish[] [his] case from the typical cases . . . ." See U.S.S.G. § 5H1.4. Although "[a]n extraordinary physical impairment . . . ; e.g., in the case of a seriously infirm defendant," may warrant a downward departure, see id., Petitioner does not allege that he suffers from such an impairment, see, e.g., United States v. Hernandez, 89 F. Supp. 2d 612, 616 (E.D. Pa. 2000) (holding that the defendant's diabetes, asthma, and high blood pressure did not "give the court discretion to depart").

As for his mother, Petitioner asserts that she too suffers from diabetes and that her health deteriorated as a result of the criminal proceedings brought against him. (Doc. No. 1323 at 11.) He alleges that his "mother was diagnosed with kidney disfunction and at the moment of [his] sentence, his mother started to receive a daily dialysis session." (Id.) Even though sentencing counsel did not seek a more lenient sentence based on Petitioner's mother's health, "family ties

7

and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." See U.S.S.G. 5H1.6.  The "medical conditions of members of a defendant's family are discouraged as grounds for departure" and will warrant a departure only if the "defendant establish[es] the severity of the medical condition as well as his own indispensability to the family member's care: ordinary family responsibilities are not enough, and if someone else can provide the care there is no ground for a departure." See Parker, 2002 WL 32341775, at *4.

Regrettable though Petitioner's mother's health may be, Petitioner does not allege that his mother needs him to care for her (now or at the time of sentencing) or that she depends upon him for medical or other support.  Because Petitioner cannot show that he would have been entitled to a departure based on his mother's health, he has failed to establish that his sentencing counsel was ineffective for failing to raise the issue, or that sentencing counsel prejudiced him by that omission.  See, e.g., Watson v. United States, No. 04-cr-392, 2009 WL 2393450, at *4 (E.D. Pa. Aug. 4, 2009) (noting that "a judge should only consider departing from the offered guidelines in 'extraordinary' circumstances" and that "[m]any defendants shoulder responsibilities to their families, their employers, and their communities").  Counsel cannot be ineffective for "fail[ing] to raise a meritless argument." See United States v. Bui, 795 F.3d 363, 366-67 (3d Cir. 2015) (internal quotation marks omitted).

    **C.    Counsel's Alleged Failure to Object to the Three-Level Enhancement for Petitioner's Aggravated Role in the Offense and Failure to Argue that Petitioner Should Be Safety-Valve Eligible**

Petitioner's third and fourth bases for relief are interrelated.  They concern a sentencing enhancement that he received for his aggravated role in the offense, which also precluded him from being eligible for "safety valve" relief.  Specifically, because Petitioner was sentenced as a "manager or supervisor" in "criminal activity [that] involved five or more participants or was

otherwise extensive" under U.S.S.G. § 3B1.1(b), he received a three-level sentence enhancement and, as a result, became ineligible under the safety valve exception provided in 18 U.S.C. § 3553(f) and its corollary in U.S.S.G. § 5C1.2(a)(4), (b). Had Petitioner qualified for the safety valve exception, he would have been sentenced "without regard to any statutory minimum sentence," see 18 U.S.C. § 3553(f), and entitled to a two-level reduction to his base offense level, see U.S.S.G. § 5C1.2(b).[3]

Petitioner therefore argues that sentencing counsel was ineffective for failing to "object to the three[-]level upward adjustment for an aggravated role in the charged offense" and failing to argue that Petitioner was entitled to the benefit of the safety valve exception. (Doc. No. 1323 at 8, 26.) He alleges that counsel "fail[ed] to investigate the real role that [Petitioner did] play" and maintains that he "was neither leader nor supervisor in the charged conspiracy." (Id. at 7.) He submits that he "debrief[ed] the Government [as to his] complete involvement with the charged conspiracy" and "at no time . . . admit[ted] that [he] was a supervisor" but, rather, asserted that he "received the drug[s] and distributed [them] to [his customers]." (Id.)

As Petitioner's § 2255 counsel concedes, "[t]he Government correctly indicates that the role enhancement was agreed to in the plea agreement." (Doc. No. 1412 at 6.)[4] Petitioner's plea agreement included a joint recommendation that he "was a manager or supervisor in the criminal activity which involved five or more participants or was otherwise extensive" and that his "offense level should be increased three[]levels pursuant to USSG § 3B1.1(b). (Doc. Nos. 1123 at 8-9, 1381 at 8.) At his change of plea hearing, Petitioner agreed that he was "not only a

---

[3] To be eligible under the safety valve exception, a defendant must meet additional requirements not relevant here. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

[4] Indeed, according to counsel, Petitioner's challenges to his sentence are not an attempt to invalidate the plea agreement; rather, he "only seeks the relief that he originally sought in the petition which is a new sentencing hearing." (Id.)

9

member of the conspiracy, but a manager and supervisor in the organization as he received delivery of the heroin shipments from Mexico." (Doc. No. 1382 at 19.) Magistrate Judge Carlson engaged in an extensive colloquy during which Petitioner expressly acknowledged that he fully understood, reviewed, and consulted with his attorney regarding the plea agreement. (Id. at 10.)[5] Petitioner signed his own offense statement, which indicated that he "distributed or helped to distribute more than 10 kilograms but less than 30 kilograms of heroin" and "fit the definition of manager and supervisor under the advisory sentencing guidelines." (PSR at 14.) Counsel could not have been expected to object to terms to which Petitioner himself agreed.

Moreover, the offense conduct set forth in the PSR reflected, inter alia, that the Government had intercepted calls during which Petitioner was attempting to coordinate others to transport large amounts of heroin. (PSR at 6-9.) The United States Court of Appeals for the Third Circuit "has determined that a manager or supervisor is one who exercise[s] some degree of control over others involved in the offense." United States v. Duran, 528 F. App'x 215, 219 (3d Cir. 2013) (brackets in original). Petitioner's role in coordinating others to transport heroin fits within that definition.

In light of Petitioner's acknowledgement of his role as a manager or supervisor and the fact that the conduct for which he was sentenced places him squarely within that role, he has failed to establish that sentencing counsel was ineffective for failing to argue to the contrary. Even if Petitioner could show that sentencing counsel's representation fell "below a reasonable standard," Magistrate Judge Carlson's "plea allocution and the Government's conveyance of the agreement's terms advised [him] of the 'actual sentencing possibilities.'" See Dixon v. United

---

[5] Petitioner was aided by a court-certified Spanish interpreter and indicated that the pleadings and plea agreement had been translated in full for him. (Doc. No. 1381 at 4.)

States, 151 F. Supp. 3d 582, 596 (E.D. Pa. 2015) (quoting McCoy v. United States, 96 F. Supp. 2d 469, 479 (E.D. Pa. 2000)). To the extent Petitioner argues that his sentencing counsel misadvised him about whether he played a managerial or supervisory role in his offense, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where," as here, "an adequate plea hearing was conducted." See United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotation marks omitted) (omission in original).

### D. Counsel's Alleged Failure to Address the Government's Breach of the Plea Agreement

With his fifth challenge and basis for § 2255 relief, Petitioner asserts that sentencing counsel provided ineffective assistance by failing to argue that the Government breached the plea agreement. (Doc. No. 1323 at 9.) According to Petitioner, he had "sign[ed] a plea agreement [that] stipulated a sentencing range of 120 to 135 months [of] imprisonment" but was nonetheless sentenced to 140 months. (Id.) He therefore alleges that the Government breached the plea agreement by "not ask[ing] the Court for a sentence below the top of the stipulated sentence range in the plea agreement." (Id.)

These claims are flatly contradicted by the plea agreement and fall far short of establishing ineffective assistance of counsel. The plea agreement, which Petitioner signed and acknowledged as true and correct in open court, nowhere references a sentencing range of 120 to 135 months' imprisonment. (Doc. No. 1123.) The plea agreement provided that the Government "may make a recommendation that it considers appropriate based upon the nature and circumstances of the case and [Petitioner's] participation in the offense . . . ." (Doc. No. 1123 at 9.) The Government expressly "reserve[d] the right to recommend a sentence up to and including the maximum sentence of imprisonment . . . ." (Id.) Given the clear import of the plea agreement, sentencing counsel had no basis on which to argue that the Government breached it.

11

Any such argument would not only have been futile but also disingenuous.

### E. Counsel's Alleged Deficiencies During Plea Negotiations

Finally, Petitioner argues that his sentencing counsel failed to provide effective assistance during plea negotiations. (Doc. No. 1323 at 9.) Petitioner asserts that his plea "was not knowing and voluntary." (Id.) He further contends that he "expressly told [his sentencing] counsel that [he] did not want to waive [his] right to appeal" and that the plea agreement "said nothing about the role in the offense and the Safety Valve provision." (Id.)

The Court has already recited the circumstances surrounding Petitioner's plea and will not repeat them here except to reiterate that Petitioner signed the plea agreement, signed his own offense statement, and acknowledged unequivocally on the record – during a thorough colloquy following which Magistrate Judge Carlson found that the plea was entered knowingly and voluntarily – that he clearly understood the terms of the agreement. Regarding waiver, the plea agreement reflects that Petitioner "knowingly waive[d] the right to appeal the conviction and sentence, so long as the sentence imposed is within or below the advisory guideline range, as determined by the Court." (Doc. No. 1123 at 27-28.) Petitioner's sentence to one hundred forty (140) months' incarceration was below the initially recommended guideline range (151 to 188 months) and at the lower end of the guideline range ultimately adopted by Judge Caldwell (135 to 168 months), despite some hesitation as to "whether [Petitioner] [was] really entitled to it." (Doc. No. 1406-2 at 12.) At his change of plea hearing, Petitioner acknowledged his waiver of the right to appeal as "a fair description of [his] agreement with the Government[.]" (Doc. No. 1381 at 10.) Moreover, contrary to Petitioner's assertion, the plea agreement clearly indicated his aggravated role as a manager or supervisor, as the Court already noted, supra.

Significantly, when a defendant is convicted upon a plea of guilty, "in order to satisfy the

'prejudice' requirement [under Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 52 (1985).  In this case, Petitioner does not argue that he would have gone to trial – instead, he merely seeks a resentencing hearing.  For that reason alone, his final ground for habeas relief is unavailing.

### F. Certificate of Appealability

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued.  A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Here, the Court concludes that jurists of reason would not disagree with the Court's assessment of Petitioner's claims.  Accordingly, the Court will not issue a COA in regard to the bases for relief that the Court is denying.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's § 2255 motion in regard to his sentencing counsel's failure to file an appeal and deny Petitioner's motion in all other respects.

The Court will not issue a COA in regard to the denied bases of Petitioner's motion.  An appropriate Order follows.